J-S05040-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| VAN LAUNDRY, INC. A/K/A D/B/A VAN'S LAUNDROMATS, INC., A/K/A D/B/A VANS LAUNDROMATS, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 1620 EDA 2024 |
| | : | |
| CORINTHIAN, LLC A/K/A 835 CORINTHIAN, LLC A/K/A D/B/A 835 CORINTHIAN STREET, LLC, FISHTOWN ROYAL DE, LLC, AND RYAN KIM | : | |

Appeal from the Judgment Entered May 23, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 220201636

| | | |
|---|---|---|
| VAN LAUNDRY, INC. A/K/A D/B/A VAN'S LAUNDROMATS, INC., A/K/A D/B/A VANS LAUNDROMATS, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| 835 CORINTHIAN, LLC, FISHTOWN ROYAL DE, LLC, AND RYAN KIM | : | No. 1740 EDA 2024 |
| | : | |
| Appellants | : | |

Appeal from the Judgment Entered May 23, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 220201636

BEFORE: BOWES, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:      **FILED APRIL 9, 2025**

_____

[*] Former Justice specially assigned to the Superior Court.

Appellant/Cross-Appellee Tenant Van Laundry, Inc. a/k/a d/b/a Van's Laundromats, Inc., a/k/a d/b/a Vans Laundromats, Inc. (hereinafter "Tenant" or "Appellant Tenant") and Cross-Appellants 835 Corinthian, LLC, Fishtown Royal DE, LLC, and Ryan Kim (hereinafter "Landlord" or "Cross-Appellant Landlord") file an appeal and cross-appeal, respectively, from the trial court's judgment entered on May 24, 2024. After careful consideration, we affirm all aspects of the trial court's judgment except for its award of damages in the amount of $31,617.00 to Appellees/Cross-Appellants Landlords and against Appellant/Cross-Appellee Tenant, which award is vacated and remanded for reassessment consistent with this decision.

The trial court sets forth the relevant procedural history of the instant case:

> Plaintiff/Appellant Tenant Laundromat commenced this action [in tort and contract] by way of filing a writ of summons on February 15, 2022. Appellant Tenant then filed a complaint on July 23, 2022, [to] which Defendant/Cross-Appellant Landlord filed an answer with new matter and counterclaim [asserting breach of contract] on January 4, 2024. [During discovery, Tenant presented evidence that its laundromat equipment was damaged by heavy rains entering the interior of the business through an alleged negligently conducted roof repair by Landlord] After discovery concluded, this matter proceeded to a bench trial.
>
> On January 8, 2024, a bench trial was held in which the trial court received testimony and documentary evidence from both parties. The trial court heard from Mark Evans, a former employee of Appellant Tenant (N.T. 01/08/24, 27-59), Jack Burkhardt, Appellant Tenant's mechanical engineering expert in valuation of laundromat equipment (N.T. 01/08/24, 89-103), Mao Khai Van, owner of Appellant Tenant, with interpreter (N.T. 01/08/24, 104-156), and Ryan Kim, member of Cross-Appellant Landlord (N.T. 01/08/24, 157-191).

The parties submitted proposed findings of fact and conclusions of law after the trial. On January 22, 2024, the trial court issued its finding, which found for Appellant Tenant Laundromat on one of its claims in the amount of $25,000.00, for Cross-Appellant Landlord on one of its claims in the amount of $31,617, [and offset the awards to arrive at a remainder of $6,617 in Cross-Appellant/Landlord's favor].

[After denying on the merits both Appellant Tenant's and Cross-Appellant Landlord's respective post-trial motions by Order of May 23, 2024, the trial court entered judgment in the same May 23, 2024, filing.]

Appellant Tenant filed a notice of appeal on June 13, 2024, and on the same day the trial court issued, and the parties received, notice of a [Pa.R.A.P.] 1925(b) Order onto Appellant Tenant, [who] timely responded on July 5, 2024. Cross-Appellant Landlord filed a notice of appeal on June 20, 2024, and on June 21, 2024, the trial court issued, and the parties received, notice of a 1925(b) Order onto Cross-Appellant Landlord, [who] timely responded on July 11, 2024.

Trial Court Pa.R.A.P. 1925(a) Opinion, 7/25/2024, at 2-4.[1]

_____

[1] Based on this procedural history, we reject the trial court's conclusion that Appellant Tenant and Cross-Appellant Landlord have filed untimely appeals and/or appeals from unappealable orders requiring dismissal due to a jurisdictional defect. While it is true that both Tenant and Landlord filed notices of appeal erroneously purporting to appeal from the order and decree entered on January 23, 2024, both filings occurred only after the trial court had entered its May 24, 2024, judgment relating to all prior orders that had disposed of all claims and all parties after the denial of their respective post-trial motions. It is well-settled that an appeal properly lies from the entry of judgment following the trial court's disposition of post-trial motions. ***Fanning v. Davne***, 795 A.2d 388 (Pa. Super. 2002). Nevertheless, our court has exercised jurisdiction over appeals where a notice of appeal purports the appeal is taken from an order preceding the entry of judgment. ***See Siana v. Noah Hill, LLC***, 322 A.3d 269, 275-276 (Pa. Super. 2024) (appellate jurisdiction exercised despite appellants' defective notice of appeal purporting to appeal from order awarding counsel fees rather than from judgment entered several days later on the award; defect deemed harmless where

*(Footnote Continued Next Page)*

Plaintiff/Appellant Tenant Laundromat raises the following issues in its

appeal:

1. Was it an abuse of discretion and error of law for the trial court (going against the weight of the evidence) to award $31,617.00 in damages in favor of the Appellees/Cross-Appellants [Landlord] per the Order dated January 22, 2024, in that the weight of the evidence was so contrary to the court's decision because (1) the undisputed evidence showed that any alleged damages against Appellant[/Tenant Laundromat] was capped at six (6) month's [sic] rent under Paragraph 10 of the Lease?

2. Was it an abuse of discretion and error of law for the trial court to determine per the Order dated January 22, 2024, that the Parties stipulated at trial that the 10/18/21 Notice demonstrated clear and convincing evidence that the Appellees/Cross-Appellants [Landlord] notified Appellant/Cross-Appellee [Tenant Laundromat] when Use and Occupancy Taxes were allegedly due and/or unpaid taxes were due and/or that the [Landlord] ever demonstrated that notice was ever provided to [Tenant] regarding unpaid taxes?

Brief of Appellant Tenant Laundromat at 5.

Defendant/Cross-Appellant Landlord raises the following issue in its

cross-appeal:

Whether the trial court committed an error of law or abuse of discretion when it found in favor of Plaintiff-Appellant in the amount of $25,000.00 on its claims against Defendant-

_____

timely appeal was taken after entry of judgment and caused no prejudice to opposing party); *Cf King v. Hinkle*, (non-precedential decision cited for persuasive value pursuant to Pa.R.A.P. 126(b)) No. 259 WDA 2024, 2025 WL 79038, at *1 (Pa. Super. filed Jan. 13, 2025) (appeal erroneously taken from order denying post-trial motion held to have caused no jurisdictional defect impeding review where notice of appeal related forward to the date on which judgment was entered). Accordingly, no jurisdictional defect impedes our review.

Appellee/Cross-Appellant for breach of the covenant of quiet enjoyment?

Brief of Cross-Appellant Landlord, at 1.

Regarding both Tenant's second enumerated issue and Landlord's sole issue on appeal, our review of the record, party briefs, and the Honorable Carmella Jacquinto's well-reasoned and comprehensive 32-page Pa.R.A.P. opinion leads us to conclude these issues merit no relief. Briefly addressing Tenant's second issue, in which he challenges the trial court's determination that Landlord provided Tenant with notice of default and the consequential responsibility of Tenant under the lease to pay any unpaid real estate taxes, we observe that the trial court explains on pages 14 to 16 of its opinion that it deemed Landlord's testimony more credible than Tenant's testimony on this discrete issue of notice. In its present assessment of this second weight of the evidence claim advanced by Tenant, the trial court perceives in its fact-finding and determination thereon no palpable abuse of discretion or mistake that shocks one's sense of justice that would be necessary to grant Tenant relief on his issue. Our review yields no reason to disturb its exercise of discretion on this issue.

Similarly, the trial court aptly denied Landlord's sole issue assailing the trial court's decision to find in favor of Tenant's quiet enjoyment claim. As explained on pages 20 to 35, the trial court discerned no abuse of discretion shocking the conscience in its determination that Tenant's claim of breach of quiet enjoyment under the lease was supported by evidence of both Tenant's continued payments of monthly rent after the expiration of the parties' 10-

year lease and Landlord's acceptance of such payments, which constituted a holdover tenancy relationship enabling Tenant to prevail on his contract-based claim.

On reviewing both issues, we find no basis under our standard and scope of review, *infra*, to disturb the court's judgment respective to them. Accordingly, as the trial court's opinion disposes of said issues after engaging in a comprehensive review supported by appropriate reference to the record and legal authority, we affirm the trial court's judgment pertaining to said issues based on the trial court's opinion.

We turn, then, to address Tenant's first issue. The scope and standard of review applicable to this weight of the evidence claim are as follows:

> [O]ur scope of review on a weight of the evidence claim is very limited. We will respect the trial court's findings with regard to credibility and weight of the evidence unless it can be shown that the lower court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence.

[**Rissi v. Cappella**, 918 A.2d 131, 140 (Pa. Super. 2007)] (quoting **Hollock v. Erie Ins. Exchange**, 842 A.2d 409, 417 (Pa. Super. 2004)). In **In re M.B.**, 228 A.3d 555 (Pa. Super. 2020), this Court quoted the principles governing a weight of the evidence claim as stated by our Supreme Court in **Commonwealth v. Clay**, 64 A.3d 1049 (Pa. 2013). There, the Court explained:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. ... It has often been stated that a new trial should be

- 6 -

awarded when the [factfinder's] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> **Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.** Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.
>
> *In re M.B.*, 228 A.3d at 566 (quoting *Clay*, 64 A.3d at 1054-55) (internal citations, quotations, and emphasis omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence[.]" *Id.* (quoting *Clay*, 64 A.3d at 1055).

*Alkozbari v. Wanaselja*, 313 A.3d 209 (Pa. Super. 2024) (emphases in bold added).

Tenant contends the trial court engaged in an erroneous weighing of the evidence relating to the extent of his liability for damages stemming from Tenant's purported default under the parties' lease. Specifically, Tenant argues the damages award must be vacated and recalculated because the trial

court failed to apply the damages cap appearing in the parties' lease, which lease, the trial court had concluded, continued to bind the parties at the time in question. We agree.

Our review of the trial court's exercise of discretion in resolving this post-trial issue against Tenant leads us to find that the trial court simply denied the existence of, and thus did not consider at all, the damages cap provision present in the lease. In so doing, the trial court failed to incorporate into its exercise of discretion a most essential consideration bearing on what, if any, damages Tenant owes for default under the lease.

In the trial court's Rule 1925(a) opinion addressing this issue, it summarily explains that Tenant argued in its post-trial motion and again in its appeal "that paragraph 10 of the Lease capped damages but said paragraph does not contain/mention any such language[,]" and the trial court ends its discussion of the matter there. Our independent review of the record strongly suggests the trial court's truncated review of this issue was influenced by Tenant's post-trial and appellate filings inadvertently transposing the lease page and paragraph numbers relating to the damages cap provision.

Nevertheless, both the provision's location within the lease and its content already had been accurately conveyed multiple times throughout the litigation by counsel for Tenant, such that we cannot accept the exercise of discretion, or lack thereof, manifest in the court's summary rejection of this issue.

Counsel for Tenant identified the damages cap provision within the lease, recited the provision verbatim in both written submissions and in open court during trial, and advanced the position that the cap applies to any purported default Tenant may be found to have committed and prevails over all other provisions in the Lease by its very terms. Specifically, in his pretrial filings, opening argument at trial, examination of witnesses, submission of the lease into evidence, closing arguments, and post-trial motion, counsel for Tenant indicated correctly that the lease agreement caps Tenant's liability upon default to no more than "6 months base rent or base rent for the remainder of the term, whichever is less."[2] N.T. at 21 and 153.

During examination of a witness at trial, counsel for Tenant correctly directed the court to the page and paragraph of the lease articulating the damages cap provision in question. N.T. at 153. In both his post-trial motion and again in the appellate brief for Tenant, however, counsel mistakenly indicated the damages cap provision is in "Paragraph" 10 of the lease when it, instead, appears in Paragraph 20 that begins on "Page" 10, as counsel for

_____

[2] Paragraph 20, DEFAULT, provides in relevant part:

> For good and valuable consideration, Landlord agrees to the following provision: Notwithstanding any provision in this Lease to the contrary, Landlord and Tenant agree that Tenant's liability upon default shall not exceed 6 months base rent or base rent for the remainder of the term, whichever is less.

Parties' Lease Agreement, at Paragraph 20, pages 10-11.

Tenant correctly apprised the court during his examination of a witness. Landlord and the trial court have seized on counsel's error to conclude, summarily, that "Paragraph 10" does not contain a damages cap.

Counsel's transposition of page and paragraph in what is a relatively short and easily navigated lease would have been readily discerned and overcome by the exercise of judicial review meeting the standards necessary to address properly the Tenant's post-trial assertion that the damages award of $31,617.00 went against the weight of the evidence showing the damages cap provision within the lease applied to the facts at hand. Therefore, we find the trial court erred when it failed to address in any meaningful way Tenant's post-trial motion asserting that evidence at trial proved he should have benefitted from the existence of a lease provision expressing that Landlord agrees, for good and valuable consideration, that a described cap shall apply to Tenant's default-related damages.

Accordingly, we vacate judgment on this basis alone and remand to the trial court, which shall determine whether the weight of the evidence adduced at trial established that the damages cap set forth in the parties' lease applied to the damages assessed against Tenant and, if so, to what effect.

Judgment affirmed in part, vacated in part, and remanded for further proceedings consistent with this decision. Jurisdiction relinquished.

Judge Murray joins the memorandum.

Judge Bowes files a concurring and dissenting memorandum.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>4/9/2025</u>

| | | |
|---|---|---|
| **VAN LAUNDRY, INC.** | : | **COURT OF COMMON PLEAS** |
| | : | **PHILADELPHIA COUNTY** |
| | : | **CIVIL DIVISION** |
| | : | |
| **v.** | : | **FEBRUARY TERM, 2022** |
| | : | **No. 220201636** |
| | : | |
| | : | **SUPERIOR COURT** |
| **835 CORINTHIAN,** | : | **1620 EDA 2024** |
| **LLC ET AL** | : | **1740 EDA 2024** |

## OPINION

**JACQUINTO, J.**

Pursuant to Pa.R.A.P. 1925(a), the trial court hereby submits this Opinion detailing the reasons the trial court's May 24, 2024 Order (Order dated May 23, 2024, notice provided on May 24, 2024; See Pa.R.A.P. 108(b)), which denied Appellant Van Laundry, Inc.'s Post-Trial Motion, denied Cross-Appellant's Post-Trial Motion, and entered judgment in the aggregate in favor of Cross-Appellant and against Appellant, should be affirmed. As discussed herein below, it is respectfully suggested that the Appellant's relief sought be denied, the Cross-Appellant's relief sought be denied, and the trial court's May 24, 2024 Order be affirmed.

OPFLD-Van Laundry, Inc. Vs 835 Corinthian, Llc [ACH]

22020163600149

1

## PROCEDURAL AND FACTUAL HISTORY

Appellant commenced this action by way of filing a writ of summons on February 15, 2022. Appellant then filed a complaint on July 23, 2022, which Cross-Appellant filed an answer with new matter and counterclaim on March 1, 2023. Appellant answered Cross-Appellant's counterclaim on January 4, 2024. After discovery concluded, this matter proceeded to a bench trial.

On January 8, 2024, a bench trial was held in which the trial court received testimony and documentary evidence from both parties. The trial court heard from Mark Evans, a former employee of Appellant (N.T. 01/08/24, 27-59), Jack Burkhardt, Appellant's mechanical engineering expert (N.T. 01/08/24, 63-83), Andrew Walls, Appellant's expert in valuation of laundromat equipment (N.T. 01/08/24, 89-103), Mao Khai Van, owner of Appellant, with interpreter (N.T. 01/08/24, 104-156), and Ryan Kim, member of Cross-Appellant (N.T. 01/08/24, 157-191). The parties submitted proposed findings of fact and conclusions of law after the trial. On January 22, 2024, the trial court issued its finding, which found for Appellant on one of its claims in the

2

amount of $25,000, for Cross-Appellant on one of its claims in the amount of $31,617, thus, in the aggregate found in favor of Cross-Appellant and against Appellant in the amount of $6,617.

On February 2, 2024, Appellant filed a timely Post-Trial Motion. Due to complications with Cross-Appellant's counsel, the trial court issued an Order, placing the matter in deferred status for 60 days in order for Cross-Appellant to retain new counsel. Cross-Appellant responded to Appellant's Post-Trial Motion on April 16, 2024. On the same day, Cross-Appellant filed its own Post-Trial Motion, which Appellant responded to on May 6, 2024. The trial court then entered an Order on May 23, 2024, denying Appellant's Post-Trial Motion, denying Cross-Appellant's Post-Trial Motion, and entering judgment in favor of Cross-Appellant and against Appellant in the aggregate. Parties were given notice of the trial court's May 23, 2024 Order the following day, May 24, 2024.

Appellant filed a notice of appeal on June 13, 2024 and on the same day, the trial court issued and the parties received notice of a 1925(b) Order onto Appellant, which was timely

3

responded to on July 5, 2024. Cross-Appellant filed a notice of appeal on June 20, 2024 and on June 21, 2024 the trial court issued and the parties received notice of a 1925(b) Order onto Cross-Appellant, which was timely responded to on July 11, 2024.

**ISSUES**

Per the Appellant's 1925(b) Statement, the issue raised on appeal is as follows:

I. "It was an abuse of discretion and error of law by the trial court (going against the weight of the evidence) to award $31,617.00 in damages in favor of the [Cross-Appellant] per the Order dated January 23, 2024, in that the weight of the evidence was so contrary to the aforementioned decision because (1) the undisputed evidence showed that any alleged damages against [Appellant] were capped at six (6) months rent under Paragraph 10 of the Lease; (2) [Cross-Appellant] never demonstrated through clear and convincing evidence that they notified [Appellant] when Use and Occupancy Taxes were allegedly due in accordance with the Lease; (3) and the Parties never

4

stipulated at trial that the 10/18/21 Notice demonstrated that the [Appellant] owed [Cross-Appellant] $31,617.00 in unpaid taxes as rent (which was the core disagreement as to the case and controversy) and where [Cross-Appellant] never raised the alleged collection of unpaid taxes as a Counterclaim against the [Appellant]."

Per the Cross-Appellant's 1925(b) Statement, the issues raised on appeal are as follows:

I.    This Court erred by finding in favor of Plaintiff Van Laundry, Inc. ("Plaintiff") and against 835 Corinthian, LLC on Count I of the Complaint (the "Complaint") in the amount of $25,000.00 for breach of the covenant of quiet enjoyment, pursuant to paragraph 3 of the Lease (the "Lease") entered into by the parties hereto.

II.    Specifically, this Court committed error by failing to find that, after September 2020, Plaintiff became a holdover tenant and was, thus, not entitled to the covenant of quiet enjoyment from September 2020 onward.

5

III. Additionally, this Court committed error by failing to recognize that, by Mr. Van's own admission at trial, he never provided written notice of renewal to 835 Corinthian or its predecessor-in-interest in accordance with the terms and conditions of the Lease.

IV. This Court committed error by failing to recognize that Plaintiff did not produce any written evidence at trial of renewal of the expired term of the Lease (the "Lease Term").

V. Furthermore, this Court committed error by failing to hold that, because Plaintiff was a holdover tenant without any legal or equitable right to possession of the subject leased premises (the "Leased Premises"), Plaintiff was not entitled to the benefits of the covenant of quiet enjoyment contained in the Lease.

VI. Additionally, this Court committed error by failing to find that Plaintiff's Chapter 11 Bankruptcy proceedings discharged and/or dismissed all of Plaintiff's claims

regarding the expired Lease, including Plaintiff's claim for breach of the covenant of quiet enjoyment.

VII. Lastly, this Court committed error by finding in favor of Plaintiff, where a balancing of the equities definitively weighed against Plaintiff, which had failed to pay any rent on account of the Lease Premises after December 2020, despite continuing to store its equipment at the Leased Premises until March 2023 without providing 835 Corinthian, LLC any compensation.

**ARGUMENT**

**I.    Preliminarily, Appellant's and Cross-Appellant's appeals should be quashed as the Superior Court lacks jurisdiction over this matter due to parties' failure to appeal from a final order.**

Regarding whether appellate jurisdiction exists, "[j]urisdiction is purely a question of law; the appellate standard of review is de novo and the scope of review plenary." Iron City Constr., Inc. v. Westmoreland Wooded Acres, Inc., 2023 PA Super 5, 288 A.3d 528 (2023).

The Superior Court has exclusive appellate jurisdiction of all appeals coming from **final orders** of the courts of common pleas.

7

42 Pa. Stat. and Cons. Stat. Ann. § 742 (emphasis added). A final order is an order that disposes of all claims and all parties. Pa.R.A.P. 341(b). Additionally, "no order of a court shall be appealable until it has been entered upon the appropriate docket in the trial court." Pa.R.A.P. 301(a). "An interlocutory order, on the other hand, is any order that does not dispose of all claims and all parties. Basically, final orders end a case. Interlocutory orders do not." Barak v. Karolizki, 2018 PA Super 258, 196 A.3d 208, 215 (2018) (internal citations and quotations omitted). "Generally, an appeal will only be permitted from a final order unless otherwise permitted by statute or rule of court." Fanning v. Davne, 2002 PA Super 45, 795 A.2d 388 (2002). There are exceptions, none of which apply to the instant matter, to appealing an interlocutory order. See Pa.R.A.P. 311; Pa.R.A.P. 312; and Pa.R.A.P. 1311. Furthermore, "the notice of appeal...shall be filed within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a).

In the matter at hand, the Superior Court lacks jurisdiction over this appeal as the parties' failed to take an appeal from a

final order and this cannot be cured because the time to take an appeal from a final order has elapsed. The trial court issued its finding in the aggregate in favor of Cross-Appellant and against Appellant via its January 23, 2024 Order, in which the parties received notice of such on January 25, 2024. Both parties took their respective appeals from this January 25, 2024 Order. (See Appellant's and Cross-Appellant's notices of appeal). Said Order is interlocutory and not final because even though it disposed of all claims and all parties, the judgment was not entered on the docket, which is a prerequisite under the Pennsylvania Rules of Appellate Procedure. The only final order in this case with which the Superior Court would have jurisdiction over is the May 24, 2024 Order, which disposed of both parties' post-trial motions and entered judgment on the docket. With both parties appealing a non-final order and there being no applicable exception to appealing an interlocutory order, the Superior Court lacks jurisdiction over the instant appeal. Moreover, under the Pennsylvania Rules of Appellate Procedure, the deadline to file a timely appeal was June 24, 2024, which was thirty days after the

9

parties received notice of the trial court's May 24, 2024 Order that denied the post-trial motions and entered the judgment on the docket. Remand to rectify the timeliness issue would be ineffective, as such deadline to take an appeal from a final order has already passed. Therefore, it is respectfully suggested that both appeals be quashed, and the trial court's May 24, 2024 Order, which denied Appellant's Post-Trial Motion, denied Cross-Appellant's Post-Trial Motion, and entered judgment in the aggregate in favor of Cross-Appellant and against Appellant, be affirmed.

## APPELLANT'S ISSUES

**II. In the event it is determined the parties did invoke the Superior Court's jurisdiction by timely appealing a final order, the trial court properly denied the Appellant's Post-Trial Motion requesting JNOV and new trial due to the trial court's finding does not shock one's sense of justice.**

In an abundance of caution, as appellate cases have discussed parties couching sufficiency of the evidence claims as claims of going against the weight of the evidence, the trial court wants to point out that any issue/argument on appeal as to the sufficiency of the evidence has been waived for Appellant's failure

10

to move for directed verdict at trial. See <u>Haan v. Wells</u>, 2014 PA Super 226, 103 A.3d 60, 68 (2014). Therefore, any issue/argument on appeal pertaining to sufficiency of the evidence is waived. In Appellant's Post-Trial Motion, they sought relief in the form of JNOV and new trial. Appellant's only issue on appeal alleges the trial court abused its discretion and/or erred by going against the weight of the evidence, and the trial court will discuss the weight of the evidence issue in those contexts.

Assuming *arguendo* that the Appellant timely appealed from a final order, which it did not, the applicable standard of review is as follows:

> "Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. **One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.**
> The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the

11

witnesses. **The trial court may award a judgment notwithstanding the verdict or a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.** When a fact finder's verdict is so opposed to the demonstrative facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking.

> However, [i]f there is any support in the record for the trial court's decision to deny the appellant's motion for a new trial based on weight of the evidence, then we must affirm. An appellant is not entitled to a new trial where the evidence presented was conflicting and the fact-finder could have decided in favor of either party."

Spencer v. Johnson, 2021 PA Super 48, 249 A.3d 529, 566 (2021).

Furthermore, "[t]rial courts have broad discretion to grant or deny new trials and each review of a challenge to a new trial order must begin with an analysis of the underlying conduct or omission by the trial court that formed the basis for the motion." Harman v. Borah, 562 Pa. 455, 465-66, 756 A.2d 1116, 1121-22 (2000). "There is a two-step process that a trial court

12

must follow when responding to a request for a new trial. First, the trial court must decide whether one or more mistakes occurred at trial. Second, if the trial court determines that a mistake occurred, it must determine whether the mistake was sufficient basis for granting a new trial. It is well-settled law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with a trial court's authority to grant or deny a new trial." Id.

Here, Cross-Appellant filed a counterclaim against Appellant sounding in breach of contract, regarding the Lease between the parties. In the counterclaim, amongst other averments, Cross-Appellant averred that "Counterclaim Plaintiff has suffered significant damages as a direct result of the actions and inactions of Counterclaim Defendant...WHEREFORE, Counterclaim Plaintiffs 835 Corinthian, LLC, Fishtown Royal DE LLC and Ryan Kim demand judgment in its favor and against Counterclaim Defendant Van Laundry Inc. in an amount in excess of $50,000, together with punitive damages, costs, interest, and other relief." No preliminary objections were ever made to the counterclaim's

13

averments regarding specificity. Furthermore, the record is devoid of Appellant making an objection at trial to any testimony regarding unpaid real estate taxes on the grounds of not being plead nor was anything raised in the Appellant's proposed findings of fact and conclusions of law as to failure to plead any counterclaim regarding real estate taxes, therefore, that issue would be waived under Pa.R.A.P. 302. Moving on, the Lease between the parties reads at Paragraph 23 that, "Tenant will be responsible for paying Tenant's prorated portion of the real estate tax..." At Paragraph 36, it reads,

> "Landlord agrees to notify Tenant in writing in accordance with this Lease of any back charges due under this Lease...All parties agree and acknowledge that time is of the essence with respect to these matters. In the event that Landlord does not appropriately notify Tenant within ninety (90) days of the date upon which said charges had become due, Landlord agrees that it has waived its rights to said back charges..."

At trial, the parties stipulated to an October 18, 2021 letter from Cross-Appellant's former counsel, providing notice to Appellant of the unpaid real estate taxes in the amount of $31,617. The

14

following exchange occurred at trial during Appellant's cross-examination of Cross-Appellant's member Ryan Kim,

> "Q. So did you ever send Mr. Van a tax bill?
> A. Isn't it his responsibility to pay the taxes?
> Q. Are the taxes -- who are the taxes mailed to?
> A. He was also supposed to pay the rent, but he didn't pay the rent. Why would he pay the taxes?
> Q. Is it the landlord's job to provide notice of the taxes?
> A. He also gets the same taxes, does he not?
> Q. So how –
> A. It's also public record, right?
> THE COURT: Counsel. Ask the question. Go ahead.
> Q. How do you expect him to pay a bill he may not have? Did you ever send him?
> A. I directed it to my attorney.
> Q. So did your attorney send a writing asking him to pay the tax bill?
> A. Yes.
> Q. When I say attorney, Mr. Kashkashian?
> A. Yes.
> Q. You have that communication?
> MR. ADLER: P-8. It's already stipulated.
> MR. TAYLOR: That would be, the first communication would be –
> MR. ADLER: The first communication was P-7. P-8, you asked about taxes.
> BY MR. TAYLOR: Q. Not until October 18, 2021, that you made your first request for taxes?
> A. Does that mean it's not due? He didn't pay it."

(N.T. 01/08/24, 176-177).

Based on the record and after a review of the previously-mentioned evidence, the trial court properly denied Appellant's

Post-Trial Motion seeking JNOV and new trial on the grounds of going against the weight of the evidence because the finding against Appellant does not shock one's sense of justice as it is not contrary to the evidence presented at trial. The trial court in this case was free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. Operating as factfinder in a non-jury case, the trial court was entitled to believe Cross-Appellant testimony/evidence over Appellant testimony/evidence to conclude Appellant is liable for the unpaid real estate taxes owed to Cross-Appellant. The facts and inferences of the record do not disclose a palpable abuse of discretion, which is needed to reverse the trial court's finding. Moreover, with no mistake occurring at trial, there exists no reason to grant a request for a new trial. Thus, with the finding not shocking one's sense of justice, the trial court did not abuse its discretion when it denied Appellant's request for JNOV and new trial.

Appellant argued in its Post-Trial Motion and in its sole issue on appeal that paragraph 10 of the Lease capped damages but said paragraph does not contain/mention any such language.

Appellant also mentions use and occupancy tax in its sole issue raised on appeal, however, this is of no concern because the trial court did not make a finding regarding use and occupancy tax and/or, in the alternative, such an issue that "Cross-Appellant never demonstrated through clear and convincing evidence..." was waived by Appellant for failure to move for directed verdict at trial. Therefore, it is respectfully suggested that the Appellant's relief sought be denied, and the trial court's May 24, 2024 Order, which denied Appellant's Post-Trial Motion, denied Cross-Appellant's Post-Trial Motion, and entered judgment in the aggregate in favor of Cross-Appellant and against Appellant, be affirmed.

## CROSS-APPELLANT'S ISSUES

**III. In the event it is determined the parties did invoke the Superior Court's jurisdiction by timely appealing a final order, the trial court properly denied the Cross-Appellant's Post-Trial Motion requesting JNOV due to the trial court's finding not being an abuse of discretion, but rather, supported by the evidence.**

As stated previously, the trial court wants to point out that any issue/argument on appeal as to the sufficiency of the

17

evidence has been waived for Cross-Appellant's failure to move for directed verdict at trial. See Haan v. Wells, 2014 PA Super 226, 103 A.3d 60, 68 (2014). Therefore, any issue/argument on appeal pertaining to sufficiency of the evidence is waived. In Appellant's Post-Trial Motion, they sought relief in the form of JNOV. Cross-Appellant raised several issues on appeal, all of which will be collectively discussed herein but only in a weight of the evidence context due to Cross-Appellant's waiver of any sufficiency arguments.

Assuming *arguendo* that the Appellant timely appealed from a final order, which it did not, the applicable standard of review is as follows:

> "Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. **One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.**

18

The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. **The trial court may award a judgment notwithstanding the verdict or a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.** When a fact finder's verdict is so opposed to the demonstrative facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking.

**However, [i]f there is any support in the record for the trial court's decision to deny the appellant's motion for a new trial based on weight of the evidence, then we must affirm. An appellant is not entitled to a new trial where the evidence presented was conflicting and the fact-finder could have decided in favor of either party.**"

Spencer v. Johnson, 2021 PA Super 48, 249 A.3d 529, 566 (2021).

Under Pennsylvania law, holdover tenancies are created "[w]hen a tenant remains in possession after the termination of a lease, the landlord has the choice of treating such a tenant[...]as a tenant holding over." Reading Terminal Merchants Ass'n by

19

<u>Asteris v. Samuel Rappaport Assocs.</u>, 310 Pa. Super. 165, 173–74, 456 A.2d 552, 556 (1983). Moreover,

> "[f]or a tenancy to result from a holding over, the landlord must exercise his election, indicating his consent to the tenancy. Usually this consent will be manifest by accepting rent...The law is clear that when a tenant is possession under a lease continues as a hold over tenant, the law implies a new lease on the same terms and subject to the same covenants and conditions as those contained in the original lease."

<u>Id</u>.

Here, Paragraph 3 of the Lease states, in part,

> "Landlord covenants, warrants, and represents that upon commencement of the Lease term, Landlord has full right and power to exeute and perform this Lease, and to grant the estate demised herein; and that **Tenant, upon payment of the rent herein reserved and performance of the covenants and agreements hereof, shall peaceable and quietly have, hold and enjoy the Premises and all rights, easements, covenants, and privileges belonging or in any way appertaining thereto, during the Term of this Lease**...Should Landlord fail to uphold and perform the aforementioned covenants, Landlord and Tenant agree that Tenant's damages will be significant and difficult to fully ascertain, and therefore it is agreed that Tenant's damages shall be agreed to be in the amount of $25,000. This payment is not to be construed as a penalty, but as liquidated damages."

Paragraph 2 of the Lease states, in part, "The initial term of this Lease is ten (10) years from the Commencement Date of this

Lease. Tenant has the option to renew this Lease for (1)

additional five (5) year renewal term by a written notice..."

At trial, Appellant's former employee, Mark Evans, testified

the following on direct examination,

> "Q. Good afternoon. My name is Jon Taylor. I am
> counsel for Van Laundry LLC Incorporated. Were you
> ever employed by Van Laundry?
> A. Yes.
> Q. What was -- when were you employed?
> A. The first time or?
> Q. When did your appointment start?
> A. When I first got hired not at that shop, at the other
> shop, 2019.
> Q. And when did you start working at the location at
> Corinthian Avenue?
> A. Couple months later.
> Q. What was your job at the Corinthian Avenue
> location?
> A. My job was to make sure the people doing the
> laundry, making, selling the stuff like detergents and
> everything, and helping anybody who needed help.
> Q. Can you briefly describe what the condition of the
> exterior of the property on December 25, 2020, was?
> A. It was water was coming down.
> Q. I am asking, the question I asked was about the
> condition of the property. What was the condition like?
> A. It was fine.
> Q. Was any work being done on the property?
> A. Yes. Upstairs on the second, third floor.
> Q. Any roof work being done on the property?
> A. I guess it was.
> Q. Why do you believe there was roof work done on the
> property?
> A. Guy kept saying he needed a tarp.

Q. What do you mean by tarp?

A. He needed a tarp to cover the roof.

Q. What was the tarp that was covering the roof? What did it look like?

A. It was blue.

Q. And was the blue tarp tightly fastened to the roof? Loosely?

A. I don't -- sounded like it was loose when it was blowing in the wind. You can hear it.

Q. Were you working at the premises on December 25, 2020?

A. Yes.

Q. Can you describe what happened on that day?

A. The water was coming down from the ceiling fans, from the lights, the walls, the panel, the electrical panel. Like the whole place was leaking all over the place, behind the dryers and everything.

Q. Was it raining outside?

A. Yes.

Q. Was it raining a lot? A little?

A. Raining a lot. It was raining inside too.

Q. So what did you do to -- can you give an idea of how much water was coming through?

A. I put the buckets, I put the trashcans first near the washers to try to catch the water, but it was filling up too fast. And then I had the little trashcans, but they were filling up pretty fast. So I, like, dumped them, like, six times. It was a lot of water.

Q. Do you recall how many washers were in the laundromat?

A. Give me a second on that. I can't.

Q. Do you recall how many dryers were in the laundromat?

A. I think 29.

Q. Were there roughly the same amount of washers and dryers or were the numbers different?

A. They were different. I am used to --

Q. Wait. Well, I am not going to stop you. My question is roughly more dryers or more washers or less dryers?

A. I think more washers.

Q. Did you call the owner of Van Laundromat?

A. Mr. Van, yes.

Q. Did he come to the premises?

A. He told me to lock up and get out of there.

Q. Was there any concern about the electrical box during the rain?

A. When I said to the contractors, you know, you got water coming out the electrical box, they said we'll look at it.

MR. ADLER: Objection. Hearsay.

THE COURT: Sir, you can't say what anybody told you. I will sustain that. You can say what you observed, you know, what you learned, not what anybody said to you, okay?

BY MR. TAYLOR:

Q. Did you observe the electrical box?

A. Yes.

Q. What did you see?

A. There was leaking out of it.

Q. Did business resume at that laundromat after the rain?

A. No.

Q. So was the business closed down after that?

A. Yes."

(N.T. 01/08/24, 27-31).

Appellant's owner testified the following on direct examination,

"Q. I will ask another question. On December 25, 2020, did the premises have water damage?

A. Yes.

Q. And was that water damage described earlier by Mr. Evans who testified earlier?

A. That's before.

23

Q. Okay. Did you stop paying rent after the laundromat got damaged by the rain?
A. So the check I submitted for December 20 supposed to cover up until January the 20th.
THE COURT: What year? January 2021?
THE WITNESS: Twenty-one, yes.
BY MR. TAYLOR: Q. Did you pay rent for February 2021?
A. No.
Q. Why?
A. Because I asked him to make the repair, but he couldn't repair for me to reopen the place.
Q. Why couldn't you reopen?
A. Because the ceiling fell down. Okay. So the electrical, I could not turn it back on. I was afraid it was going to start a fire.
Q. Why were you afraid to use the electrical?
A. Because I know around Christmas time the rain came down from the third floor down. It came down to my office and the whole electric panel was wet.
Q. Can you use the laundry machines?
A. I was afraid to open.
Q. Could you open the business to the public?
A. No, I cannot do."

(N.T. 01/08/24, 117-118).

Appellant's owner further testified on cross-examination,

"Q. Is there a written notice showing that the lease has been extended? Anything in writing?
A. So I remember that I reminded every time I make the payment at Maria house, and I remember 7 or 8 months' prior to expiration that I told her and I tell her that she need to remember that I have an option for that 5-year extension.
Q. But did she ever give you a written option for the 5-year extension?

24

A. (In English) Don't worry. I make sure –
MR. ADLER: Objection.
THE COURT: That's the answer to your question.
THE WITNESS: (Through interpreter) Every time I say that, she keep saying don't worry, don't worry –
MR. ADLER: But it's hearsay.
THE COURT: That's his answer to your question.
THE WITNESS: -- you will get your 5 years.
MR. ADLER: Move to strike.
THE COURT: Overruled. I want to know what happened. Overruled.
THE WITNESS: She said don't worry, I will make sure you have the 5 years.
THE COURT: Nothing was in writing, correct, sir?
THE WITNESS: Correct."

(N.T. 01/08/24, 135-136).

Ryan Kim, member of Cross-Appellant, testified as follows,

"Q. So when you say "contractor," who was the contractor?
A. Level Up.
Q. Who hired Level Up? Was it the corporation 835 Corinthian Street LLC or was it Fishtown Royal DE? Is that an LLC? Which corporation hired them?
A. Fishtown Royal.

Q. A roof did leak in December 2020; is that correct?
A. During repairs it may have leaked one day and then got repaired the next day as we were constructing the roof.
Q. Why do you think the roof was leaking?
A. We were in the middle of construction."

(N.T. 01/08/24, 158; 162).

25

Instantly, in sum, the record reflects the following: 1) Appellant never provided the required written notice to exercise the additional five-year period, which means that the Lease between the parties expired in September 2020; 2) a holdover tenancy was created when Appellant remained in possession of the leased premises and Cross-Appellant kept accepting rent until Appellant ceased paying rent after December 2020; 3) in December 2020, which would be before Appellant stopped paying rent and during the holdover tenancy, the leased premises became infiltrated with water as a result of Cross-Appellant's construction on the roof, which resulted in Appellant not being able to use the leased premises. Thus, while being a holdover tenant in December 2020, meaning all covenants and conditions from the original lease remain in effect, the Appellant's right to quiet enjoyment of the leased premises under Paragraph 3 of the Lease was breached by Cross-Appellant when the leased premises became flooded due to rain infiltration from the construction Cross-Appellant was having done to the roof.

With all sufficiency arguments waived on appeal for Cross-Appellant's failure to move for directed verdict at trial, based on the record and after a review of the previously mentioned evidence, the trial court properly denied Appellant's Post-Trial Motion seeking JNOV because the finding against Appellant does not shock one's sense of justice as it is not contrary to the evidence presented at trial. The trial court in this case was free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. Operating as factfinder in a non-jury case, the trial court was entitled to believe Appellant testimony/evidence over Cross-Appellant testimony/evidence to conclude Cross-Appellant is liable for breaching paragraph 3 of the Lease. The facts and inferences of the record do not disclose a palpable abuse of discretion, which is needed to reverse the trial court's finding. Thus, with the finding not shocking one's sense of justice, the trial court did not abuse its discretion when it denied Appellant's request for JNOV.

Cross-Appellant also argues that the trial court's finding went against a balancing of the equities, but as previously

discussed, the record shows Appellant was a holdover tenant with the original Lease still controlling, which supports the trial court's finding that paragraph 3 of the Lease was violated. Thus, with the finding not shocking one's sense of justice, the trial court did not abuse its discretion when it denied Appellant's request for JNOV.

Cross-Appellant also argues on appeal that the trial court violated the law of the case doctrine. The law of the case doctrine "...refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." True R.R. Assocs., L.P. v. Ames True Temper, Inc., 2016 PA Super 282, 152 A.3d 324, 336–37 (2016). "To determine whether the law of the case doctrine applies, a court must examine the rulings at issue in the context of the procedural posture of the case." Mariner Chestnut Partners, L.P. v. Lenfest, 2016 PA Super 277, 152 A.3d 265, 282–83 (2016). "[It] prevents a court from addressing an issue that previously was resolved by a court of concurrent jurisdiction." Ramsay v. Pierre, 822 A.2d 85, 92 (2003).

28

Cross-Appellant argues that the trial court here must abide by the July 8, 2024 Order entered in the case of Van Laundry, Inc. v. 835 Corinthian, LLC at trial court case number 220201468. Said Order reads as follows, "AND NOW, this 7th day of July, 2022, upon consideration of the Petition for Preliminary Injunction filed by plaintiff, the responses thereto, and all other matters of record in this action and the related actions, it is ORDERED that said Petition is DENIED." Furthermore, said Order had a footnote that explained,

> "Petitioner seeks repossession of premises it rented to operate a laundromat, but it has not yet produced written evidence of an alleged renewal of the expired Lease's term. Petitioner has not, at this point, shown a likelihood of success on the merits of its claim for restoration of possession, **although it may have a claim for money damages.**"

(July 8, 2022 Order, case number 220201468, Exhibit P-& in the trial court case below) (emphasis added).

The trial court's finding, discussed more above, does not run afoul of violating the law of the case doctrine because the finding has nothing to do with Appellant regaining possession of the leased premises, but rather, Cross-Appellant's conduct causing

the leased premises to become damaged by water all while Appellant was a holdover tenant with the same covenants and conditions from the original lease in effect. The evidence at trial clearly showed that the Appellant did not provide the required written notice to renew the Lease and the trial court's finding is consistent with that fact. Moreover, the July 8, 2022 Order even suggested in the footnote that Appellant may have a claim for money damages, which it did, and the trial court here discussed its finding previously. Also, the July 8, 2022 Order is from a different matter. The trial court was not involved in the later phases of that matter and did not reopen questions decided by another judge of that same court in the earlier phases of that other matter, so the trial court fails to see how the law of the case doctrine applies.

Lastly, the Cross-Appellant argued that the bankruptcy proceedings Appellant was involved in dismissed all claims pertaining to the Lease. The Bankruptcy Court Order reads as follows, "The estate of the above-named debtor has been fully administered. IT IS ORDERED on this 28th day of December 2020

30

that: 1. All fees due under 28 U.S.C. 1930 have been paid; and 2. The matter of: Van's Laundromats, Inc. – Case No. 18-15955 – MDC – Chapter 11 is hereby CLOSED."

(Bankruptcy Order, Exhibit P-8 in the trial court case below). Said Order provides nothing explicit as to its effect on Appellant's claims under the Lease as a holdover tenant. Cross-Appellant provided only argument without any supporting legal authority as to this issue. Without more, the trial court properly denied Cross-Appellant's Post-Trial Motion for JNOV.

Therefore, it is respectfully suggested that the Cross-Appellant's relief sought be denied, and the trial court's May 24, 2024 Order, which denied Appellant's Post-Trial Motion, denied Cross-Appellant's Post-Trial Motion, and entered judgment in the aggregate in favor of Cross-Appellant and against Appellant, be affirmed.

## CONCLUSION

Based on the forgoing, it is respectfully suggested that the Appellant's relief sought, and Cross-Appellant's relief sought, be denied, and the trial court's May 24, 2024 Order, which denied

31

Appellant's Post-Trial Motion, denied Cross-Appellant's Post-Trial Motion, and entered judgment in the aggregate in favor of Cross-Appellant and against Appellant, be affirmed.

BY THE COURT:

CARMELLA JACQUINTO, J.

# CERTIFICATE OF SERVICE

I, Todd Marvin, Jr., Law Clerk to the Honorable Carmella Jacquinto, hereby certify that on the 25th day of July, 2024, by first-class mail, a true and correct copy of the attached opinion was served upon the following:

**TAYLOR, WILLIAM JON**
1900 JFK BLVD., APT. 709, SUITE 1888
PHILADELPHIA PA 19103

**HAMILTON, JOHN ALEXANDER**
**NOCHUMSON, ALAN**
**KLYASHTORNY, NATALIE**
**KLEIN, JARED N**
NOCHUMSON PC
1 S BROAD ST., SUITE 1000
PHILADELPHIA, PA 19107

33